IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| RALPH N. BROWN, ) | Civil Action No. 3:07-2914-SB-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB").

## **ADMINISTRATIVE PROCEEDINGS**

On June 30, 2003, Plaintiff applied for DIB. Plaintiff's application was denied initially and on reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). After hearings held on February 2 and October 16, 2006,[1] at which Plaintiff appeared and testified, the ALJ issued a decision dated November 13, 2006, denying benefits. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff can perform.

Plaintiff was forty-nine years old at the time of the ALJ's decision. He has a high school education and past relevant work as a vehicle and truck mechanic in the United States Army. Plaintiff alleges disability since May 1, 2003, due to a combination of multiple impairments including

---

[1]The October 16, 2006 supplemental hearing was held to take vocational expert testimony.

chemical exposure in the Gulf War, chronic myofascial pain with degenerative joint changes, sleep apnea, gastrointestinal reflux disease ("GERD"), diabetic peripheral neuropathy, and chronic pain.

The ALJ found (Tr. 14-20):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b) and 404.1571 et seq.)

3. The claimant has the following severe impairments: obesity, myalgias, arthralgias, obstructive sleep apnea, and diabetes (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift/carry 20 pounds occasionally and 10 pounds frequently. He can stand/walk for 2 hours out of an 8-hour workday, and he should periodically alternate sitting and standing. He uses a cane for ambulation but can ambulate in a small work area without a cane. His ability to push/pull with his upper and lower extremities is limited; he can frequently reach, he can occasionally climb, balance, stoop, kneel, crouch and crawl; his ability to handle, finger and feel is unlimited; and he cannot climb, ramps, ladders, scaffolds or ropes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on March 10, 1957, and is 48 years old, which is defined as a younger individual (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability due to the claimant's age (20 CFR 404.1568).

> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).
>
> 11. The claimant has not been under a "disability," as defined in the Social Security Act, from May 1, 2003, through the date of this decision (20 CFR 404.1520(g)).

On June 28, 2007, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on August 23, 2007.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## DISCUSSION

On March 21, 2003, Dr. James W. Gasque, an internal medicine physician, wrote that Plaintiff reported worsening symptoms after the 1991 Gulf War and was in constant pain, but could function and manage his symptoms. Dr. Gasque opined that Plaintiff could maintain a forty-hour work week. Tr. 121-123.

3

Plaintiff was evaluated by Dr. Thomas Roesel at the Walter Reed Army Medical Center on June 6, 2003. Dr. Roesel noted Plaintiff's previous diagnoses of Type II diabetes; hypertension; high triglycerides; high cholesterol; obstructive sleep apnea; memory disorder; myalgias; arthralgias of his knees, shoulders, and elbows; left hand pain, due in part to occupational overuse; carpal tunnel syndrome; plantar fasciitis; tension headaches; GERD controlled with a low-fat diet; history of atypical chest pain; history of low back pain; and a history of hearing loss. He instructed Plaintiff to follow up with Dr. Gasque for management of diabetes, hypertension, and high cholesterol; undergo occupational and physical therapy; and improve compliance with his Continuous Positive Airway Pressure ("CPAP") machine for sleep apnea to improve his memory. Tr. 116-120.

Dr. Gasque noted on June 13, 2003 that Plaintiff complained of continued difficulty performing his job due to pain. He opined that Plaintiff should be restricted to a "sitting occupation." Tr. 115. On June 19, 2003, Dr. Gasque wrote that Plaintiff had "a medical condition that render[ed] him unable to perform the functions of his current position" and that his symptoms could be the result of a job-related injury. He recommended "full disability." Tr. 114. On September 19, 2003, the Office of Personnel Management notified Plaintiff that his application for federal disability retirement[2] had been accepted. Tr. 200.

Dr. Andre G. Sarmiento of the Moncrief Army Hospital examined Plaintiff on October 3, 2003. He diagnosed Plaintiff with hypertension, diabetes mellitus with no neuropathy, and arthritis (of his knees, shoulders, and elbows). Tr. 113.

---

[2]To qualify for federal disability retirement, an individual must be disabled from his current position or any vacant position at the same agency, pay level, and commuting area. See 5 U.S.C. § 8337.

Beginning in November 4, 2003, Plaintiff was evaluated on three occasions in connection with his application for benefits by Dr. Elizabeth Dickinson. Dr. Dickinson's November 4, 2003 examination revealed that Plaintiff had full range of motion in his cervical spine, shoulders, hips, and knees; somewhat diminished range of motion in his lumbar spine; full grip strength with normal fine and gross manual dexterity; full strength in his shoulders and lower extremities; intact cranial nerves; normal deep tendon reflexes; intact sensation in his extremities; and no focal weakness. Plaintiff was able to tandem walk and walk on his heels and toes. Dr. Dickinson diagnosed Plaintiff with diffuse myalgias and a history of Gulf War Syndrome, chronic low back pain, an abnormal EKG, and hypertension with a mild elevation of diastolic blood pressure. Tr. 146-148. X-rays of Plaintiff's chest and lumbar spine were normal on November 5, 2003. Tr. 149.

On May 18, 2004, Plaintiff told Dr. Dickinson that he had started taking insulin for diabetes. He reported that he had decreased vision in his right eye since December 2003; tingling in his feet and ankles; knee pain; continued low back pain which was exacerbated by standing more than fifteen minutes or lifting more than ten pounds, but was eased with short walking periods; and some anxiety and depression related to his military service with obsessive thoughts about the military. Dr. Dickinson's examination revealed that Plaintiff had full range of motion of his shoulders, hips, knees, and feet; full grip strength with normal fine and gross motor dexterity in his hands; full strength in his shoulders; tenderness over the sacroiliac joints with somewhat diminished range of motion; and the ability to walk on his heels and toes and tandem walk. Straight leg raise testing was negative. Dr. Dickinson also noted that Plaintiff was fully oriented, had intact recent and remote memory, no overt anxiety or agitation, mildly depressed facies, appropriate speech, and no derangement of thought processes. She diagnosed Plaintiff with uncontrolled hypertension, insulin-dependent

5

diabetes, probably retinopathy in his right eye, probable diabetic neuropathy in his feet, and low back pain localized to the sacroiliac joints with no specific radicular changes. Dr. Dickinson also opined that Plaintiff's condition had psychiatric overtones related to his previous military experiences. Tr. 152-156.

Dr. George Keller, III, a State agency physician, reviewed Plaintiff's medical records and completed a physical residual functional capacity ("RFC") assessment on May 24, 2004. He opined that Plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds frequently; stand/walk or sit about six hours in an eight-hour workday; frequently climb, balance, kneel, and crawl; and occasionally stoop and crouch. M. Patrick Jarrell, a State agency psychologist, reviewed Plaintiff's medical records and completed a psychiatric review technique form on June 2, 2004. He opined that Plaintiff had no extended episodes of decompensation and had mild limitations in daily activities, social functioning, and with concentration, persistence, and pace. Tr. 169-182.

On July 9, 2004, family practitioner Dr. Joslyn Angus noted that Plaintiff's hypertension was stable, prescribed Doxicyclene (an antibiotic) for Plaintiff's muscle pain, and refilled his other medications. Tr. 186. She noted that Plaintiff was doing well on October 4, 2004. Tr. 185. Plaintiff complained of continued muscle pain on January 3, 2005. Dr. Angus noted that Plaintiff had run out of medications and that his diabetes and hypertension were uncontrolled. She restarted his medications. Tr. 183-184.

Dr. Andrei San-Marina, a physician at the Department of Veteran Affairs Medical Center ("VAMC"), noted that Plaintiff's diabetes and hypertension were asymptomatic on February 8, 2005. An EKG and Stress Test revealed evidence consistent with reversible inferior ischemia, normal myocardial perfusion, and an ejection fraction of fifty-four percent on March 23, 2005. Tr. 237-238.

In August 2005 Plaintiff underwent surgery to remove a cataract on his right eye. Tr. 203-205. Additional records indicated that Plaintiff did not have diabetic retinopathy. See Tr. 215.

On March 14, 2006, Plaintiff was examined by Dr. Shaw Nawaz at the VAMC. Plaintiff reported that he received a letter from the government informing him that a possible exposure to small amounts of Sarin gas in the Gulf War increased his chances of brain cancer. He stated that he stopped taking his blood pressure medication in case that was causing his headaches. Dr. Nawaz noted that Plaintiff walked for exercise about one to two times per week, was not careful with his diet, and had asymptomatic hypertension without any chest pain or other symptoms. Examination revealed that Plaintiff was in no acute distress and his lower extremities were normal. Dr. Nawaz changed Plaintiff's blood pressure medication and recommended exercise and a better diet. Tr. 268-270. A CT scan of Plaintiff's brain was unremarkable on March 24, 2006. Tr. 293.

On April 10, 2006, Plaintiff was examined by neurologist John Steedman for complaints of headaches which Plaintiff thought were related to chemical exposure during the Gulf War. Dr. Steedman opined that sleep apnea was the likely cause of Plaintiff's headaches and recommended that Plaintiff use his CPAP machine when he took naps. Tr. 264-267, 288-291.

On May 22, 2006, Dr. Dickinson noted that x-rays showed that Plaintiff had some degenerative joint changes, but had no significant limitation in his joint movement. Examination revealed full strength in Plaintiff's upper extremities, normal fine and gross motor dexterity, mild muscular fasciculation with repetitive movement of his biceps, no atrophy, no degenerative joint changes in his hands, full extension of elbows, full range of motion of his knees and hips with full strength, some loss of lumbar curvature or stiffening of his lumbar spine, good strength on a stop to stand test, normal neurological examination, and no overt anxiety or depression. Plaintiff had a cane

7

with him, but was able to ambulate across the room without it. Dr. Dickinson noted that the use of a cane over longer distances might be helpful, but was not medically necessary. She diagnosed chronic myofacial pain, diabetes, well-controlled hypertension, and diabetic peripheral neuropathy in Plaintiff's feet. Tr. 240-243, 248.

On July 17, 2006, Dr. Dickinson completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form. She opined that Plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently; stand and/or walk at least two hours a day; needed to periodically alternate between standing and sitting; could occasionally climb stairs, balance, kneel, crouch, crawl, and stoop; could never climb ladders, ropes, ramps, or scaffolds; could frequently reach; and was limited in his ability to push and pull with his upper and lower extremities. Tr. 244-247.

On July 18, 2006, Dr. Nawaz noted that Plaintiff had much better control of his diabetes, hypertension, high cholesterol, and sleep apnea with resolution of his headaches. Tr. 263-264. Plaintiff complained of headaches on August 18, 2006, but noted improvement with CPAP machine and smoking cessation. Dr. Steedman prescribed amitriptyline and recommended continued smoking cessation and CPAP use. Tr. 251-253.

At the first hearing, Plaintiff testified that he retired from the United States Army in September 1995 with over twenty years of service. He stated he was rated two years after retirement and received service and non-service connected disability of forty percent. Tr. 304-305. Plaintiff stated that after retiring from the Army he was employed at the United State Postal Service, has been found disabled to perform his postal job, and receives one hundred percent disability benefits from that job. Tr. 308.

Plaintiff complained of pain in his muscles, joints, and fingers; headaches; fatigue; and weakness. Tr. 316. He also testified he had problems with his elbows, lifting his arms overhead, and repetitive motion. Tr. 322-323. Additionally, he claimed that his medications caused the side effects of headaches, drowsiness, and not feeling good. Tr. 320. Plaintiff testified that he tried to walk for ten to fifteen minutes, but was unable to walk longer due to knee problems, shortness of breath, and joint pain. Tr. 318. He spent three to four hours a day on his computer. Tr. 324. At the second hearing, Plaintiff stated that Dr. Naswaz prescribed a cane for walking. Tr. 332.

Plaintiff alleges that the ALJ erred in his analysis at step five of the sequential evaluation process and failed to meet his burden to demonstrate that their were other jobs that Plaintiff could perform despite his limitations. The Commissioner contends that substantial evidence[3] supports the final decision that Plaintiff was not disabled.

    A.    <u>Application of the Medical-Vocational Guidelines</u>

Plaintiff alleges that the ALJ erred in failing to consider whether this was a borderline case under the medical-vocational guidelines ("Grids"), 20 C.F.R., Part 404, Subpart P, App. 2. He appears to argue that because he was less than four months from turning fifty at the time of the ALJ's

---

[3]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

<u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984); <u>Laws v. Celebreeze</u>, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. <u>Cornett v. Califano</u>, 590 F.2d 91, 93 (4th Cir. 1978).

9

decision, the ALJ should not have mechanically applied the Grids,[4] but should have determined whether he should have been found disabled under Grid Rule 201.14 (which indicates a finding of "disabled" for a claimant who is closely approaching advanced age,[5] has a high school education or more, with prior skilled or semi-skilled work and the skills are not transferable, and can only perform sedentary work). The Commissioner contends that, even giving Plaintiff the benefit of the doubt with regard to his age, the Grids direct a finding of "not disabled."[6]

The ALJ found that Plaintiff had the residual functional capacity ("RFC") for a limited range of light work.[7] Even if this was a borderline case in the Grid Rule for someone aged fifty (rather than Plaintiff's actual age) should have been used, Plaintiff would not have been found disabled. See 20

---

[4]The Regulations provide:
How we apply the age categories. When we make a finding about your ability to do other work under § 404.1520(f)(1), we will use the age categories in paragraphs (c) through (e) of this section. We will use each of the age categories that applies to you during the period for which we must determine if you are disabled. We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.
20 C.F.R. § 404.1563(b).

[5]"Closely approaching advanced age" is defined as a claimant who is fifty to fifty-four years old. See 20 C.F.R. § 404.1563(d).

[6]The Commissioner also argues that application of a higher age category was not required in this case because Plaintiff has not shown progressively more additional vocational adversities to support the use of a higher age. "Absent a showing of additional adversity(ies)[which include the presence of an additional impairment which infringes upon a claimant's remaining occupational base; a claimant barely literate in or with only a marginal ability to communicate in English, or with a work history in an unskilled job in on isolated industry or work setting] justifying use of the higher age category, the adjudicator will use the claimant's chronological age-even when the time period is only a few days. The adjudicator need not explain his or her use of the claimant's chronological age.). HALLEX II-5-3-2.

[7]See Tr. 16, 18 and 20 C.F.R. § 404.1567(b).

10

C.F.R., Pt. 404, Subpt. P, App. 2, Rule 202.14 (indicating a finding of "not disabled" for a claimant closely approaching advanced age, with a high school or more education, with prior skilled or semi-skilled work and the skills were not transferable, who was restricted to light work).[8]

        B.        <u>Conflict with the Dictionary of Occupational Titles</u>

Plaintiff alleges that the VE failed to explain the inconsistency of his testimony with the information provided in the Dictionary of Occupational Titles ("DOT"). Specifically, he claims that the DOT directly contradicts the VE who identified "light" jobs that required standing only two hours out of an eight hour day because SSR 83-10 and 20 C.F.R. § 404.1567(b) define light work as requiring standing and/or walking six hours a day. The Commissioner contends that the ALJ did not err, as the VE testified that there were no conflicts between his testimony and the DOT with regard to the exertional and skill levels of the identified jobs and he stated he personally observed the allowance of a sit-stand option in the light jobs he identified.

    SSR 00-4p provides:

> Occupational evidence provided by a VE or VS [vocational specialist] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE and VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.

<u>Id.</u> In response to the hypothetical posed by the ALJ, the VE identified jobs that such a claimant could perform, including the light jobs of storage facility clerk, carton packer, and tobacco sampler as well as the unskilled sedentary jobs of surveillance system monitor and telephone quotation clerk.

---

[8] Plaintiff would have turned fifty (March 2007) prior to his date last insured (December 2008) such that he could have filed a new application for benefits if believed he should have been found disabled under the Grids at age fifty.

11

Tr. 334-336. The VE specifically testified that there were no conflicts between his testimony and the DOT with regard to the exertional and skill levels of the identified jobs. Additionally, the VE stated that he had personally observed the allowance of a sit-stand option in the light jobs he identified. Tr. 338. The ALJ did not err in accepting this testimony, as it is a reasonable explanation for any discrepancy between the VE's testimony and the DOT. See SSR 00-4p ("Evidence from [a VE] can include information not listed in the DOT....Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained from employers, or from a [VE's] experience in job placement or career counseling....The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A [VE] or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT."); see also Fisher v. Barnhart, 181 Fed. Appx. 359, 365-66 (4th Cir. 2006) (unpublished).

  C.  Sit-Stand Option

    Plaintiff alleges that the ALJ erred in not adequately setting out the sit-stand option. He also claims that the ALJ erred in not setting out in his hypothetical Dr. Dickinson's finding[9] that Plaintiff would "frequently" need to alternate between sitting and standing.

  There is no indication that counsel representing Plaintiff at the hearing objected to the restriction in the hypothetical to the need for the hypothetical claimant to "periodically" [rather than frequently] alternate sitting and standing (Tr. 335). In his brief, Plaintiff has not argued that the ALJ erred in stating that Dr. Dickinson indicated that Plaintiff would need to "periodically" alternate

---

[9]The ALJ found that Dr. Dickinson's opinion was entitled to great weight. Tr. 17.

sitting or standing (Tr. 17) or that the ALJ erred in determining his RFC (which included that Plaintiff could perform light work with the need for "periodically" alternating sitting and standing - Tr. 15 and 18). Review of Dr. Dickinson's Medical Source Statement of Ability to Do Work-Related Activities (Physical) form reveals that although she discussed "frequent postural changes," she checked a box on the form indicating that Plaintiff would need to "periodically" alternate between sitting and standing. Tr. 245. Thus, the ALJ did not err in setting out in his hypothetical that the claimant would need to periodically alternate between sitting and standing.

## **CONCLUSION**

Despite Plaintiff's claims, he fails to show that the Commissioner's decision was not based on substantial evidence or was not correct under controlling law. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock v. Richardson, supra. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion.

Shively v. Heckler, supra.  It is, therefore,

    RECOMMENDED that the Commissioner's decision be **affirmed**.



                                                       Joseph R. McCrorey
                                                       United States Magistrate Judge

February 24, 2009
Columbia, South Carolina