IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

Ralph N. Brown,                )
                               )
          Plaintiff,           )
                               )        Civil Action No. 3:07-2914-SB
v.                             )
                               )
Michael J. Astrue, Commissioner )               **ORDER**
of Social Security Administration, )
                               )
          Defendant.           )
                               )

This is an action brought pursuant to Section 205(g) of the Social Security Act, codified at 42 U.S.C. § 405(g), to obtain judicial review of the Commissioner of Social Security's ("Commissioner") final decision, which denied the Plaintiff's claim for Disability Insurance Benefits ("DIB"). The record includes a Report and Recommendation ("R&R") of United States Magistrate Judge Joseph R. McCrorey, which was made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(a). In the R&R, the Magistrate Judge recommends that the Court affirm the Commissioner's final decision. The Plaintiff filed timely objections to the R&R, and the matter is ripe for review. See 28 U.S.C. § 636(b)(1) (providing that a party may object, in writing, to a Magistrate Judge's R&R within ten days after being served with a copy).



## BACKGROUND

### I.    Factual and Procedural History

On June 30, 2003, the Plaintiff filed his application for DIB. His application was denied initially on December 1, 2003, and upon reconsideration on June 3, 2004. On June 21, 2004, the Plaintiff filed a timely request for a hearing before an administrative law judge

("ALJ"). The ALJ held hearings on February 2, 2006, and October 16, 2006, at which the Plaintiff appeared and testified.[1] On November 13, 2006, the ALJ issued a decision denying benefits. Specifically, the ALJ concluded that works exists in the national economy that the Plaintiff can perform.

The Plaintiff was born on March 10, 1957, and was 46 years old at the time he filed his application for benefits. When the ALJ denied the Plaintiff's application, he was 49 years old and approximately four months from turning 50. He has a high school education and past relevant work experience as a vehicle and truck mechanic in the United States Army and as a postal worker. He alleges disability beginning on May 1, 2003, due to a combination of multiple impairments, including chemical exposure in the Gulf War, chronic Myofascial pain with degenerative joint changes, sleep apnea, gastrointestinal reflux disease ("GERD"), diabetic peripheral neuropathy, and chronic pain. In his decision denying benefits, the ALJ made the following findings:



1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.
2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b) and 404.1571 et seq.)
3. The claimant has the following severe impairments: obesity, myalgias, arthralgias, obstructive sleep apnea, and diabetes (20 CFR 404.1520(c)).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift/carry 20 pounds occasionally and 10 pounds frequently. He can stand/walk for 2 hours out of an 8-hour workday, and he should periodically alternate

_____

[1] The testimony of a vocational expert ("VE") was taken at the second hearing.

2

sitting and standing.  He uses a cane for ambulation but can ambulate in a small work area without a cane.  His ability to push/pull with his upper and lower extremities is limited; he can frequently reach; he can occasionally climb, balance, stoop, kneel, crouch and crawl; his ability to handle, finger and feel is unlimited; and he cannot climb ramps, ladders, scaffolds or ropes.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.    The claimant was born on March 10, 1957, and is 48 years old, which is defined as a younger individual (20 CFR 404.1563).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of disability due to the claimant's age (20 CFR 404.1568).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

11.   The claimant has not been under a "disability" as defined in the Social Security Act, from May 1, 2003, through the date of this decision (20 CFR 404.1520(g)).

(Tr. at 14-20.)  On June 28, 2007, the Appeals Council denied the Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  The Plaintiff filed the present action on August 23, 2007.

II.    **Medical Evidence**

On February 2, 1999, Dr. Michael K. Chandler treated the Plaintiff for joint pain.  Dr. Chandler noted that the Plaintiff was a Desert Storm veteran and that the Plaintiff complained of general and joint pain problems since 1992.  On May 7, 1999, the Plaintiff returned to Dr. Chandler with continued complaints, and Dr. Chandler prescribed a two-week course of Doxycycline as well as Zoloft for chronic pain.  The Plaintiff returned for two follow-visits, at which Dr. Chandler re-filled the Plaintiff's prescriptions.

On April 8, 2000, the Plaintiff was evaluated at Dorn VA Medical Center ("Dorn") for progressive joint pain, and he was assessed with myofascial pain syndrome since

September 1999 and hypertension since August 1999.  Dr. San-Marina assessed the Plaintiff with possible myositis and scheduled appointments for the Plaintiff with the pain clinic and rheumatology clinic.

On December 5, 2000, the Plaintiff received a letter informing him that he may have been exposed to a low-level chemical agent during the demolition of munitions in Iraq in 1991.  The following day, the Department of Veterans Affairs requested that the Plaintiff have a disability evaluation.  According to records provided by Dorn, the Plaintiff was seen on May 8, 2001, with complaints of groin pain and was treated for muscle strain.  He was seen again at the VA on September 6, 2001, but he had no new complaints.

Dr. James W. Gasque examined the Plaintiff on December 19, 2001, and he noted that the Plaintiff was retired from the army and needed to be examined for Gulf War Syndrome.  Dr. Gasque assessed myalgias with muscle pain, joint pain, fatigue with exhaustion after work, headaches, constipation, burning semen syndrome, memory loss, situational depression, hypertension, stable angina, and hyperlipidemia treated with Zocor.

On January 7 and 9, 2002, the Plaintiff was treated at Dorn for continued complaints of myalgia and discomfort in his hands, shoulders, and knees.

Dr. Gasque performed examinations on February 1 and 13 of 2002, and noted that the Plaintiff had complaints of bilateral hand cramps with swelling and burning semen. The Plaintiff was referred to another doctor for a second opinion regarding the hand cramping.

On February 19, 2002, the Plaintiff was seen at Dorn after being diagnosed with diabetes.  He received counseling and was prescribed Acarbose.  On August 16, 2002, the Plaintiff was seen for a follow-up visit.  He had stopped the Acarbose, but he had continued complaints of muscle aching and he requested a referral to see a private rheumatologist.

On March 21, 2003, Dr. Gasque completed a U.S. Department of Labor Health Care Provider certification, noting that the Plaintiff reported worsening symptoms after the 1991 Gulf War and was in constant pain. Dr. Gasque also opined that the Plaintiff could maintain a 40-hour work week.

On June 2 and 6, 2003, Dr. Thomas Roesel evaluated the Plaintiff at the Walter Reed Army Medical Center. Dr. Roesel noted the Plaintiff's previous diagnoses of Type II diabetes; hypertension; high triglycerides; high cholesterol; obstructive sleep apnea; memory disorder; myalgias; arhtralgias of his knees, shoulders, and elbows; left hand pain due in part to occupational overuse; carpal tunnel syndrome; plantar fasciitis; tension headaches; GERD controlled with a low-fat diet; history of atypical chest pain; history of low back pain; and a history of hearing loss. He instructed the Plaintiff to follow up with Dr. Gasque for management of diabetes, hypertension, and high cholesterol; to undergo occupational and physical therapy; and to improve compliance with his Continuous Positive Airway Pressure ("CPAP") machine for sleep apnea to improve his memory.

On June 13, 2003, Dr. Gasque noted that the Plaintiff complained of difficulty performing his job due to pain. Dr. Gasque opened that the Plaintiff should be restricted to a "sitting occupation." On June 19, 2003, Dr. Gasque wrote that the Plaintiff had a "medical condition that render[ed] him unable to perform the functions of his current position" and that his symptoms could be the result of a job-related injury. He recommended "full disability." On September 19, 2003, the Office of Personnel Management notified the Plaintiff that his application for federal disability retirement had

been accepted.[2]

Dr. Andre G. Sarmiento of the Moncrief Army Hospital treated the Plaintiff on October 3, 2003, and diagnosed him with hypertension, diabetes mellitus with no neuropathy, and arthritis (of his knees, shoulders, and elbows).

Dr. Elizabeth Dickinson evaluated the Plaintiff three times in connection with his application for benefits. On November 4, 2003, Dr. Dickinson noted that the Plaintiff had full range of motion in his cervical spine, shoulders, hips, and knees; somewhat diminished range of motion in his lumbar spine; full grip strength with normal fine and gross manual dexterity; full strength in his shoulders and lower extremities; intact cranial nerves; normal deep tendon reflexes; intact sensation in his extremities and no focal weaknesses. Dr. Dickinson further noted that the Plaintiff could tandem walk and walk on his heels and toes. Dr. Dickinson diagnosed the Plaintiff with diffuse myalgias and a history of Gulf War Syndrome, chronic low back pain, an abnormal EKG, and hypertension with a mild elevation of diastolic blood pressure. X-rays taken of the Plaintiff's chest and lumbar spine on November 5, 2003, appeared normal.

On May 18. 2004, the Plaintiff told Dr. Dickinson that he had started taking insulin for diabetes. He reported that he had decreased vision in his right eye since December 2003; tingling in his feet and ankles; knee pain; continued low back pain, which was exacerbated by standing more than fifteen minutes or lifting more than ten pounds but ceased with short walking periods; and some anxiety and depression related to his military

---

[2] To qualify for federal disability retirement, an individual must be disabled from his current position or any vacant position at the same agency, pay level, and commuting area. See 5 U.S.C. § 8337.

service with obsessive thoughts about the military. Dr. Dickinson's examination revealed that the Plaintiff had full range of motion of his shoulders, hips, knees, and feet; full strength with normal fine and gross motor dexterity in his hands; full strength in his shoulders; tenderness over the sacroiliac joints with somewhat diminished range of motion; and the ability to walk on his heels and toes and tandem walk. Dr. Dickinson also noted that straight leg raise testing was negative, and that the Plaintiff was fully oriented; had intact recent and remote memory; had no overt anxiety or agitation; and had mildly depressed facies, appropriate speech, and no derangement of thought processes. She diagnosed the Plaintiff with uncontrolled hypertension, insulin-dependent diabetes, probable retinopathy in his right eye, probable diabetic neuropathy in his feet, and low back pain localized to the sacroiliac joints with no specific radicular changes. Dr. Dickinson opined that the Plaintiff's condition had psychiatric overtones related to his previous military experiences.

On May 24, 2004, Dr. George Keller III, a State agency physician, reviewed the Plaintiff's medical records and completed a physical residual functional capacity ("RFC") assessment. Dr. Keller opined that the Plaintiff could lift and carry fifty pounds occasionally and twenty-five pound frequently; stand/walk or sit about six hours in an eight-hour workday; frequently climb, balance, kneel, and crawl; and occasionally stoop and crouch. On June 2, 2004, M. Patrick Jarrell, a State agency psychologist, reviewed the Plaintiff's medical records and completed a psychiatric review technique form. Dr. Jarrell opined that the Plaintiff had no extended episodes of decompensation and had mild limitations in daily activities, social functioning, and with concentration, persistence, and pace.

On July 9, 2004, family practitioner Joslyn Angus noted that the Plaintiff's

hypertension was stable. She prescribed an antibiotic for the Plaintiff's muscle pain and refilled his other medications. On October 4, 2004, Dr. Angus noted that the Plaintiff was doing well. On January 3, 2005, Dr. Angus saw the Plaintiff and noted that he complained of muscle pain. Because the Plaintiff had run out of his medications, Dr. Angus noted that his diabetes and hypertension were uncontrolled, and she refilled his prescriptions.

On February 8, 2005, Dr. San-Marina noted that the Plaintiff's diabetes and hypertension were asymptomatic. On March 23, 2005, an EKG and Stress Test revealed evidence consistent with reversible inferior ischemia, normal myocardial perfusion, and an ejection fraction of fifty-four percent.

In August of 2005, the Plaintiff underwent surgery to remove a cataract on his right eye. Additional records indicate that the Plaintiff did not have diabetic retinopathy.

On March 14, 2006, Dr. Shaw Nawaz examined the Plaintiff. The Plaintiff reported that he had received a letter from the government informing him that a possible exposure to small amounts of Sarin gas in the Gulf War increased his chances of brain cancer. The Plaintiff stated that he had stopped taking his blood pressure medication in case that was causing his headaches. Dr. Nawaz noted that the Plaintiff walked for exercise about one to two times a week, that he was not careful with his diet, and that he had asymptomatic hypertension without any chest pain or other symptoms. Examination revealed that the Plaintiff was in no acute distress and that his lower extremities were normal. Dr. Nawaz changed the Plaintiff's blood pressure medication and recommended exercise and a better diet. A CT scan of the Plaintiff's brain on March 24, 2006, was unremarkable.

On April 10, 2006, neurologist John Steedman examined the Plaintiff for complaints of headaches that the Plaintiff thought were related to his chemical exposure during the

Gulf War.  Dr. Steedman opined that sleep apnea was the likely cause, and he recommended that the Plaintiff use his CPAP machine when he took naps.

On May 22, 2006, Dr. Dickinson noted that x-rays showed that the Plaintiff had some degenerative joint change, but that the Plaintiff had no significant limitation in his joint movement.  Examination revealed full strength in the Plaintiff's upper extremities, normal fine and gross motor dexterity, mild muscular fasciculation with repetitive movement of his biceps, no atrophy, no degenerative joint changes in his hands, full extension of his elbows, full range of motion of his knees and hips with full strength, some loss of lumbar curvature or stiffening of his lumbar spine, good strength on a stop to stand test, normal neurological examination, and no overt anxiety or depression.  The Plaintiff had a cane with him, but he was able to ambulate across the room without it.  Dr. Dickinson noted that the use of a cane over long distances might be helpful but that it was not medically necessary.  She diagnosed chronic myofacial pain, diabetes, well-controlled hypertension, and diabetic peripheral neuropathy in the Plaintiff's feet.

On July 17, 2006, Dr. Dickinson completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form.  She opined that the Plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently; stand and/or walk at least two hours a day; needed to periodically alternate between standing and sitting; could occasionally climb stairs, balance, kneel, crouch, crawl, and stoop; could never climb ladders, ropes, ramps, or scaffolds; could frequently reach; and was limited in his ability to push and pull with his upper and lower extremities.

On July 18, 2006, Dr. Nawaz noted that the Plaintiff had much better control of his diabetes, hypertension, high cholesterol, and sleep apnea with resolution of his

headaches.   On August 18, 2006, the Plaintiff complained of headaches but noted improvement with the CPAP machine and smoking cessation.  Dr. Steedman prescribed amitriptyline and recommended continued smoking cessation and CPAP use.

## III.    Hearing Testimony

At the first hearing, the Plaintiff testified that he retired from the United States Army in September of 1995 with over twenty years of service.  He stated that he was rated two years after retirement and given a service and non-service connected disability of 40 percent.  The Plaintiff stated that after retiring from the Army, he was employed at the United States Postal Service, but that he was found to be disabled to perform his postal office job and receives 100 percent disability benefits from that job.

The Plaintiff complained of pain in his muscles, joints, and fingers; headaches; fatigue; and weakness.  He also testified that he had problems with his elbows, lifting his arms overhead, and repetitive motion.   Additionally, he claimed that his medications caused the side effects of headaches, drowsiness, and not feeling well.  The Plaintiff testified that he tried to walk for ten to fifteen minutes but was unable to walk for longer due to knee problems, shortness of breath, and joint pain. According to the Plaintiff, he spends three to four hours a day on his computer.  At the second hearing, the Plaintiff also stated that Dr. Nawaz prescribed him a cane for walking.

## STANDARD OF REVIEW

## I.    The Magistrate Judge's R&R

The Magistrate Judge makes only a recommendation to the Court.   The recommendation has no presumptive weight, and the responsibility for making a final

determination remains with the Court. Mathews v. Weber, 423 U.S. 261, 269 (1976). The Court reviews de novo those portions of the R&R to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

## II.     Judicial Review of a Final Decision

The role of the federal judiciary in the administrative scheme as established by the Social Security Act is a limited one. Section 205(g) of the Act provides that, "[t]he findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Consequently, judicial review . . . of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). "Substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."



Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). In assessing whether there is substantial evidence, the reviewing court should not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in original).

## DISCUSSION

### I.    The Commissioner's Final Decision

The Commissioner is charged with determining the existence of a disability.  The

Social Security Act, 42 U.S.C. §§ 301-1399, defines "disability" as the "inability to engage

in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. §

423(d)(1)(A).  This determination involves the following five-step inquiry:

> [The first step is] whether the claimant engaged in substantial gainful
> employment.  20 C.F.R. § 404.1520(b).  If not, the analysis continues to
> determine whether, based upon the medical evidence, the claimant has a
> severe impairment.  20 C.F.R. § 404.1520(c).  If the claimed impairment is
> sufficiently severe, the third step considers whether the claimant has an
> impairment that equals or exceeds in severity one or more of the impairments
> listed in Appendix I of the regulations.  20 C.F.R. § 404.1520(d); 20 C.F.R.
> Part 404, subpart P, App. I.  If so, the claimant is disabled.  If not, the next
> inquiry considers if the impairment prevents the claimant form returning to
> past work.  20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a).  If the answer
> is in the affirmative, the final consideration looks to whether the impairment
> precludes the claimant from performing other work.

Mastro, 270 F.3d at 177 (citing 20 C.F.R. § 416.920).

If the claimant fails to establish any of the first four steps, review does not proceed

to the next step.  Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993).  The burden of

production and proof remains with the claimant through the fourth step.  However, if the

claimant successfully reaches step five, then the burden shifts to the Commissioner to

provide evidence of a significant number of jobs in the national economy that the claimant

could perform, considering the claimant's medical condition, functional limitations, age,

education, and work experience.  Walls, 296 F.3d at 290.

12

Here, the ALJ determined that the Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision. At the second step, the ALJ found that the claimant has the following severe impairments: obesity, myalgias, arthralgias, obstructive sleep apnea, and diabetes. Third, the ALJ found that the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ then found that the Plaintiff is unable to perform any past relevant work. At the fifth step, however, the ALJ found that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. Therefore, the ALJ found that the Plaintiff was not disabled.

## II.     The Plaintiff's Complaint and the Commissioner's Response

In his complaint, the Plaintiff asserts that the ALJ erred at the fifth step of the sequential analysis for several reasons. First, the Plaintiff asserts that the ALJ needed to consider his case as a borderline case under the medical-vocational guidelines ("Grids"), 20 C.F.R., Part 404, Subpart P, App.2, because the Plaintiff was four months away from turning 50 at the time of the ALJ's decision.[3] Second, the Plaintiff asserts that the VE

---

[3] The Plaintiff was 46 years old as of his alleged onset date in May of 2003, and he was 49 years old on the date of the ALJ's decision on November 13, 2006. He turned 50 four months after the ALJ's decision, on March 10, 2007. According to the regulations, a "younger person" is "under age 50" and a "person closely approaching advanced age" is "age 50-54." See 20 C.F.R. § 404.1563(c) and (d). The regulations further provide:



> How we apply the age categories. When we make a finding about your ability to do other work under § 404.1520(f)(1), we will use the age categories in paragraphs (c) through (e) of this section. We will use each of the age categories that applies to you during the period for which we must determine if you are disabled. We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to

failed to explain the inconsistency between his testimony and the Dictionary of Occupational Titles ("DOT"). Third, the Plaintiff complains that the ALJ erred in not adequately defining the sit-stand option in determining whether the Plaintiff could still perform work in the national economy.[4]

In response to the Plaintiff's complaint, the Commissioner asserts that substantial evidence supports its decision. With respect to the application of the medical-vocational guidelines (or Grids), the Commissioner asserts that the Plaintiff still would have been found disabled under the Grids even if the ALJ had evaluated the Plaintiff's case as a "borderline" case.[5] Next, the Commissioner asserts that the VE testified that there were no conflicts between his testimony and the DOT with regard to the exertional levels of the identified jobs. Also, the Commissioner asserts that the VE stated that he personally had observed the allowance of a sit-stand option in the light jobs he identified. Lastly, the

_____

use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. § 404.1563(b).

[4] The Plaintiff complains that the ALJ indicated that the Plaintiff would need to "periodically" alternate between sitting and standing, but that Dr. Dickinson's opinion indicated that the Plaintiff would need to "frequently" alternate between sitting and standing.

[5] The Commissioner also argues that application of a higher age category was not required because the Plaintiff has not shown additional adversities to justify the use of a higher age. "Absent a showing of additional adversity(ies) justifying use of the higher age category, the adjudicator will use the claimant's chronological age – even when the time period is only a few days." HALLEX II-5-3-2. "Examples of [ ] additional vocational adversity(ies) are the presence of an additional impairment(s) which infringes upon–without substantially narrowing–a claimant's remaining occupational base; or the claimant may be barely literate in English, or have a history of work experience in an unskilled job(s) in one isolated industry or work setting." Id.

14

Commissioner asserts that the ALJ did not err in finding that the claimant needed to alternate between sitting and standing "periodically" rather than "frequently."

### III.    The Magistrate Judge's R&R and the Plaintiff's Objections

As previously mentioned, the Plaintiff complains that the ALJ erred in step five of his analysis by: (1) mechanically applying the Grids; (2) failing to resolve the conflict between the VE's testimony and the DOT; and (3) inadequately defining the sit-stand option. In the R&R, the Magistrate Judge evaluated the Plaintiff's three arguments in turn.

### A.    Application of the Grid Rules

First, the Magistrate evaluated the Plaintiff's claim that the ALJ should not have mechanically applied the Grids but should have determined whether he was disabled under Grid Rule 201.14, which indicates a finding of "disabled" for a claimant who is closely approaching advanced age, has a high school education or more, has prior skilled or semi-skilled work (with non-transferable skills), and can only perform *sedentary* work. As the Magistrate Judge noted, the ALJ found that the Plaintiff had the RFC for a limited range of *light* work.[6] Specifically, the ALJ found:

---

[6] According to the regulations:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

15

that the claimant has the residual functional capacity to lift/carry 20 pounds occasionally and 10 pounds frequently. He can stand/walk for 2 hours out of an 8-hour workday, and he should periodically alternate sitting and standing. He uses a cane for ambulation but can ambulate in a small work area without a cane. His ability to push/pull with his upper and lower extremities is limited; he can frequently reach; he can occasionally climb, balance, stoop, kneel, crouch and crawl; his ability to handle, finger and feel is unlimited; and he cannot climb ramps, ladders, scaffolds or ropes.

(Tr. at 15.) In the R&R, the Magistrate Judge then stated: "Even if this was a borderline case [where] the Grid Rule for someone aged fifty (rather than the Plaintiff's actual age) should have been used, Plaintiff would not have been found disabled." (R&R at 10.) In support of this finding, the Magistrate Judge cited Rule 202.14, which indicates a finding of "not disabled" for a claimant closely approaching advanced age, with a high school or more education and a history of skilled or semi-skilled work (with non-transferable skills), and restricted to *light* work. 20 C.F.R., Part 404, Subpart P, App. 2, Rule 202.14

In his objections, the Plaintiff asserts that the ALJ should have applied the Grid Rule for a 50 year-old limited to *sedentary* work (rather than light work), which would be closer to the Plaintiff's occupational base because the ALJ found that the Plaintiff was limited to standing and walking only 2 hours a day. As pointed out by the Plaintiff, the Grid Rule for someone 50 years old (closely approaching advanced age); who has a high school or more education and who is limited to *sedentary* work, would indicate a finding of "disabled" absent a showing of transferable skills to the sedentary level. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.14. The Plaintiff concedes that "this is something of a complex argument," but he asserts that the medical vocational guidelines are not to be applied mechanically and the ALJ needed to provide some explanation as to why these principles would not result in a finding of disability at least from the date of the hearing decision.

16

**B.     The Conflict Between the VE's Testimony and the DOT**

The Magistrate Judge next evaluated the Plaintiff's claim that the VE failed to explain the inconsistency between his testimony and the DOT.[7] At the hearing, the ALJ posed the following hypothetical to the VE:

> If you will assume that the claimant is 48 years of age, he has a high school education and two years of college. He has performed the jobs that you have prescribed in your testimony. Assume that objectively he has a history of low level chemical exposure during Gulf War I, he has chronic myofascial pain with some degenerative joint change. He has no significant limitation of motion or radiculopathy. He's status post cataract surgery with normal vision. He has obstructive sleep apnea which has required the use of a C-PAP. He has hypertension which is controlled with medications. He's been diagnosed with gastroesophageal reflux disease. He has diabetic peripheral neuropathy affecting the sensation in his feet, and has chronic pain and sensory changes and has a diagnosis of obesity. His subjective complaints include chronic and diffuse pain in the head, in the chest, the low back, limited ability to sit, stand, and walk, inability to sleep, and necessity for a cane for the purpose of walking. If you will assume that the claimant's age, education, and work background would produce, together with his objective impairments and objective complaints, would reduce his residual functional capacity, but allow the exertional, non-exertional ability to lift 20 pounds occasionally and ten pounds frequently. **He could stand two hours – stand and walk two hours of the eight-hour day.** He uses a cane for ambulation, however the medical evidence has also indicated his ability to ambulate without the cane. **As far as sitting, he must periodically alternate sitting and standing.** He would be limited in pushing and pulling with his upper and his lower extremities, and with respect to the ambulation, he – his ambulation, he is able to ambulate without the cane, but that would be in a small work area such as the physician's examining room, nothing larger than that. He could climb occasionally, balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, crawl occasionally, could frequently reach and have unlimited handling, feeling, and fingering. He should not work around or be required to work on ramps, ladders, scaffolds, or ropes; and he would have no other limitations.



(Tr. at 334-35.) (emphasis added). Because the VE testified that the Plaintiff could not

---

[7] The VE cited certain "light" jobs that the Plaintiff could perform, but the Plaintiff complains that the DOT defines these jobs as requiring standing at least 6 hours out of an 8-hour day. See also S.S.R. 83-10 and 20 C.F.R. § 404.1567(b).

perform his past relevant work, the ALJ asked the VE if the Plaintiff could perform any other jobs. The VE testified that the Plaintiff could perform the following light jobs: storage facility clerk, carton packer, and tobacco sampler, as well as the following sedentary jobs: surveillance system monitor and telephone quotation clerk. When asked whether any conflicts existed between these jobs and the exertional requirements in the DOT, the VE testified, "No, there is none." (Tr. at 336.) In the hearing decision, the ALJ did not refer to or rely on the light jobs listed by the VE; rather, the ALJ referred only to the sedentary jobs listed by the VE, namely, surveillance monitor and telephone quotation clerk.

In the R&R, the Magistrate Judge found that the ALJ did not err in accepting the VE's testimony based on the VE's statements (1) that there were no conflicts between his testimony and the DOT and (2) that he had personally observed the allowance of a sit-stand option in the light jobs he identified.

The Plaintiff objects to the R&R on the basis of the double logic inherent in the VE's statements, on the one hand, that no conflict existed, and on the other hand, that he had observed the light jobs performed with a sit-stand option (to explain the apparent conflict between the Plaintiff's ability and the job as defined by the DOT).

## C.    Definition of the Sit-Stand Option

Finally, the Magistrate Judge evaluated the Plaintiff's argument that the ALJ inadequately defined the sit-stand option by indicating that the Plaintiff would need to "periodically" alternate between sitting and standing (rather than "frequently"). The Magistrate Judge noted that it did not appear that the Plaintiff's counsel had objected to this at the hearing, but regardless, that Dr. Dickinson had discussed "frequent posture changes" on the Medical Source Statement of Ability to Do Work form and had also

checked a box on the form indicating that the Plaintiff would need to "periodically" alternate between sitting and standing.

In his objections, the Plaintiff clarifies his argument somewhat by pointing out that the DOT does not describe a sit-stand option for the sedentary jobs cited by the ALJ in the hearing decision.   Furthermore, the Plaintiff asserts that the jobs at issue are not professional or managerial jobs where the Plaintiff would have some choice as to whether to sit or stand.  Rather, according to the Plaintiff, the jobs cited by the VE and relied upon by the ALJ are unskilled and particularly structured, so that a person cannot ordinarily sit or stand at will.  See also S.S.R. 83-12.  The Plaintiff asserts that the ALJ needed to elicit testimony from the VE to explain this conflict.

## IV.     This Court's Analysis

After a review of the record, the Court is unable to find that the Commissioner's decision is supported by substantial evidence based upon inconsistencies between the ALJ's decision and the application of the Grids and between the VE's testimony and the DOT.

First, with respect to the application of the Grids, the Court finds the ALJ's reliance on the Grids applicable to a *light* work limitation inconsistent with his actual findings.  In his decision, the ALJ found that the Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently; could stand or walk for 2 hours out of an 8-hour workday; and needed to periodically alternate between sitting and standing.[8]  While this appears consistent with

---

[8]  Section 404.1567 defines light work as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the

light work at first glance, in determining whether the Plaintiff could perform other work, the

ALJ seemingly limited the Plaintiff to *sedentary* work.  The ALJ states:

> If the claimant had the residual functional capacity to perform the full range of **sedentary** work, a finding of "not disabled" would be directed by Medical-Vocational Rules 201.21 and 201.22.  However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.  To determine the extent to which these limitations erode the unskilled **sedentary** occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.  The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative **sedentary** occupations such as surveillance monitor, of which there are 1892 such jobs in South Carolina and 48,600 in the United States; and telephone quotation clerk, 996 in South Carolina and 63,450 in the United States.

(Tr. at 19.) (emphasis added).  Moreover, nowhere in his decision does the ALJ rely on the

light jobs cited by the VE.[9]  In addition, as the Plaintiff pointed out, his occupational base

was much closer to sedentary work based on the limitation that he could only walk or stand

---



weight may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[9] Perhaps the ALJ recognized some inconsistency between the VE's testimony and the DOT with respect to the light jobs cited (maybe based on the Plaintiff's limitation of walking and standing no more than 2 hours in a day and the DOT's contrary description of the job), but it is not clear from the record what the ALJ determined with respect to the VE's testimony regarding the light jobs.

two hours in an 8-hour day.[10]  Thus, it appears that the ALJ intended to limit the Plaintiff

to sedentary work.  In fact, the Rules referenced by the ALJ in his decision (Rules 201.21

and 201.22) apply to an individual limited to sedentary work.

In opposing the Plaintiff's claim, the Commissioner asserts that the Plaintiff would

have been found "disabled" regardless of whether the ALJ had considered him to be a

younger individual (49) or an individual closely approaching advanced age (50).  This is so,

according to the Commissioner, based on Rules 202.21 (younger individual) and 202.14

(individual closely approaching advanced age).  It is important to note, however, that Rules

202.21 and 202.14 apply to an individual limited to *light* work and not *sedentary* work.

See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 202.14 & 202.21.  Here again, it appears

that the ALJ intended to limit the Plaintiff to *sedentary* work, as his decision specifically

refers to only sedentary work and he relied only on sedentary jobs in finding that the

Plaintiff could perform other work.

In regard to the application of the Grids in borderline age situations, the Appeals

Council Interpretations provide the following:

> To identify borderline age situations when making disability determinations,
> adjudicators will apply a two-part test:
> (1) Determine whether the claimant's age is within a few days or a few
> months of a higher age category.
> (2) If so, determine whether using the higher age category would result in a
> finding of "disabled" instead of "not disabled.
> . . . If the answer to both questions is "yes," a borderline age situation exists
> and the adjudicator must decide whether it is more appropriate to use the
> higher age or the claimant's chronological age.

---

[10] Social Security Ruling 83-14 notes that "[t]he major difference between sedentary work and light work is that most light jobs — particularly those at the unskilled level of complexity — require a person to be standing or walking most of the workday."  S.S.R. 83-14.

HALLEX II-5-3-2. Here, the Plaintiff was four months from a higher age category at the time of the decision. More importantly, however, in applying the Grids applicable to *sedentary* work, Rule 201.21 (younger individual) would indicate a finding of "not disabled," whereas Rule 201.14 (individual closely approaching advanced age) would indicate a finding of "disabled." Based on this, the adjudicator would need to decide whether it is more appropriate to use the higher age category or the claimant's chronological age. See also 20 C.F.R. § 404.1563(b) ("If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case."). Here, this analysis is wholly absent from the record, and therefore, the Court is unable to determine how or why the ALJ decided to apply the Plaintiff's chronological age category instead of the higher age category. In view of this, the Court cannot find that substantial evidence supports the Commissioner's finding that the Plaintiff could perform other work, and the Court feels that a reversal and remand is in order for further development of the record.[11]

Next, the Court finds that the ALJ failed to elicit sufficient testimony from the VE to explain inconsistencies between the VE's testimony and the DOT. Although the VE testified that there were no inconsistencies between his testimony and the DOT, this statement appears inaccurate insomuch as the light jobs cited by the VE require standing and walking beyond the Plaintiff's capabilities. Furthermore, the VE later referred to having

---

[11] The Court agrees with the Plaintiff that the Commissioner needed to at least provide some explanation as to why the Plaintiff's case was not a "borderline" case that would result in a finding of disability at least from the date of the prior decision.

observed the light jobs that he cited with a sit/stand option, which indicates that his observations somehow differ from the DOT descriptions. Arguably, the VE's testimony concerning the light jobs is irrelevant based on the fact that the ALJ did not rely on any of the light jobs cited by the VE. Nevertheless, because the VE did rely on the sedentary jobs cited by the VE, the ALJ needed to further develop the record with respect to any inconsistencies between the Plaintiff's ability (or inability) to perform the sedentary jobs as described in the DOT, e.g., whether the particular jobs provided for a sit-stand option even though not described as such in the DOT.[12] Based on the inconsistencies (and perhaps incompleteness) of the VE's testimony, the Court cannot find that substantial evidence supports the ALJ's finding that the Plaintiff can perform other work. Therefore, the Court finds that a reversal and remand is appropriate.

## CONCLUSION

Based on the foregoing, the Court declines to adopt the R&R and instead reverses the decision of the Commissioner under sentence four of 42 U.S.C. § 405(g) and 1383(c)(3) and remands the matter for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

Sol Blatt, Jr.
Senior United States District Judge

March **30**, 2009
Charleston, South Carolina

---

[12] The VE's statement that he had observed the jobs with a sit/stand option was only in reference to the light jobs cited by him and not the sedentary jobs. (Tr. at 338.)

23